***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence. The Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder or parties.
3. On September 9, 1999, the date of the contraction of the occupational disease, this cause was subject to the North Carolina Workers' Compensation Act.
4. On said date, an employment relationship existed between plaintiff and defendant-employer, Grover Industries, Inc.
5. Employer is insured by Royal Sun Alliance Insurance Company.
6. Plaintiff alleges that he contracted the occupational disease byssinosis.
7. Based upon the Form 22, plaintiff's average weekly at the time of contraction of the occupational disease was $583.94, yielding a compensation rate of $389.31.
8. Plaintiff is seeking compensation for temporary total disability, or permanent and total disability, attorney's fees, and lifetime medical expenses.
9. Plaintiff currently does not work for defendants.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-three years old and had a sixth grade education. Plaintiff is unable to read or write.
2. Plaintiff began working for defendant-employer part-time in 1983 and began working full-time in 1984. He worked for three years and then left to work at Parkdale Mills, Inc. for three years. He returned to work for defendant-employer in 1989 and remained until June of 2000. Plaintiff's prior work history includes employment at Smyre Mills, Inc. and ownership and operation of a convenience store with his wife in 1982-1984.
3. Defendant-employer processed cotton-synthetic blends during the time that plaintiff was employed. Parkdale Mills, Inc. ran a blend of cotton and synthetic and 100% rayon. Plaintiff's job duties for defendant-employer included repairing machinery while the plant was being cleaned of cotton dust as well as cleaning and repairing the filters in the plant air filtration room. Both areas were extremely dusty. Plaintiff described the air as dusty and linty and said that he could not see across the room.
4. Plaintiff failed his breathing tests administered by the defendants in 1999. As a result he was sent to a pulmonary specialist, Dr. Mark Peters, for an evaluation of his breathing condition. Spirometry tests on April 26, 1999 showed plaintiff had a pre-work shift FEV-1 (forced expiratory volume in one second) of 85 percent of predicted, which was considered normal at baseline. Plaintiff's post-shift level went down to 61 percent, which was a decrease in his FEV-1 values of 24 percent and which Dr. Peters described as a profound decrease. Dr. Peters diagnosed byssinosis based upon plaintiff's previous tests, his records and his reactivity over the work shift.
5. Dr. Michael Case, plaintiff's family physician, also treated plaintiff for his lung disease. Dr. Case stated that plaintiff would never be able to return to his former work in textiles. He stated that plaintiff was only capable of sedentary work where he could essentially sit. Dr. Peters agreed that plaintiff could not return to his former employment and that he was limited to sedentary work done in a sitting position. Plaintiff was also given restrictions of no cotton dust exposure and limited exposure to temperatures over 80 degrees and high humidity.
6. Plaintiff attempted to return to work for defendant-employer several times in 1999 but defendant-employer was unable to provide work that was within plaintiff's restrictions. Plaintiff last worked for defendant-employer in June 2000. Since that time he has not looked for work in any other employment.
7. At the time of the Deputy Commissioner hearing plaintiff's condition continued to worsen and he had weakness and shortness of breath. For the previous nine months plaintiff was on supplemental oxygen and he requires continuous oxygen therapy. According to Dr. Case, "once he crosses over to having to use oxygen, he has severe lung disease."
8. Plaintiff smoked cigarettes from the time that he was sixteen years old. He smoked 1½ to 2 packs of cigarettes a day until he quit in January 2000. As the result of his cigarette smoking, plaintiff has chronic obstructive pulmonary disease (COPD). The doctors are unable to determine what percentage of plaintiff's pulmonary condition results from exposure to cotton dust versus cigarette smoking.
9. Plaintiff's job duties as a textile worker for defendant-employer exposed him to a greater risk of developing byssinosis than the general public who are not equally exposed.
10. Plaintiff's exposure to cotton dust while employed by defendant-employer was a significant contributing factor in the development of his byssinosis.
11. Both Dr. Case and Dr. Peters stated that plaintiff's disease is chronic, permanent and progressive. Plaintiff's condition will not improve significantly, but will continue to decline for the next three to five years and plaintiff has a limited life expectancy due to his pulmonary disease.
12. Both Dr. Case and Dr. Peters agreed that plaintiff will need medical treatment for the remainder of his life, which will include a doctor's appointment every 6-12 months, supplemental oxygen on a permanent basis, various inhalers and bronchodialators, medications and nebulizer treatments, as well as chest x-rays and/or pulmonary function tests. This medical treatment will not effect a cure or tend to lessen the period of disability but will give plaintiff relief.
13. Defendants paid plaintiff's medical bills up until the time of the hearing before the Deputy Commissioner, at which time defendants discontinued payment of the medical compensation without notice to plaintiff.
14. As the result of plaintiff's contraction of byssinosis, his need for extensive continued medical treatment, his limited education and inability to read or write, his lack of training, his work experience primarily in the textile industry to which he is unable to return, and his work restrictions of only sedentary jobs in a sitting position, plaintiff is and remains totally and permanently incapable of earning wages in his employment with defendant-employer or in any other employment. Evidence that plaintiff, with his wife, owned and operated a convenience store 20 years ago does not provide sufficient information that plaintiff has any additional marketable skills because the record contains no description of plaintiff's role in the daily operations.
15. Given the complexity of the medical issues involved, defendants have not unreasonably defended this claim.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has byssinosis which is due to causes and conditions characteristic of and peculiar to his employment in the cotton textile industry. Such lung disease is not an ordinary disease of life to which members of the general public are equally exposed outside of that employment and is, therefore, an occupational disease within the meaning of the statute. N.C. Gen. Stat. § 97-53(13); Rutledge v. TultexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
2. In this case the medical evidence of record does not permit any reasonable apportionment of plaintiff's disease between the occupational disease of byssinosis and the nonoccupational chronic obstructive pulmonary disease caused by smoking. Therefore, plaintiff is entitled to an award for his entire disability in that plaintiff's exposure to cotton dust while employed by the defendants was a significant contributing factor in the development of his pulmonary disease and resulting disability. Harrell v. Harriet Henderson Yarns, 314 N.C. 566,366 S.E.2d 47 (1985); Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983).
3. Defendants did not admit the compensability of plaintiff's occupational disease and therefore there is no presumption of continuing disability and the burden of proving disability remains with plaintiff.Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277,disc. rev. denied, 353 N.C. 729, 550 S.E.2d 782 (2001).
4. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's occupational disease. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
5. In the instant case, plaintiff met his initial burden to show that he is disabled. Plaintiff is unable due to the contraction of the occupational disease of byssinosis to return to his regular job working in the textile industry. The greater weight of the evidence of record shows that while plaintiff may be capable of some limited, sitting-only work, it would be futile for him to seek employment because of his lack of education, his limited work experience, his need for continued medical treatment, and his severe lung disease.
6. Therefore, as the result of the contraction of the compensable occupational disease byssinosis, plaintiff is totally and permanently disabled and is entitled to receive compensation at the rate of $389.31 per week beginning with plaintiff's last day worked in June 2000 and continuing for the remainder of his life or until defendants obtain permission from the Commission to cease payment of total and permanent disability compensation. N.C. Gen. Stat. § 97-29; Whitley v. ColumbiaLumber Mfg. Co., 318 N.C. 89, 348 S.E.2d 336 (1986); Bridges v.Linn-Corriher Corp., 90 N.C. App. 397, 368 S.E.2d 388 (1988).
7. It appears from the evidence of record that plaintiff also is entitled to receive periods of temporary total and temporary partial disability compensation during 1999 when he unsuccessfully attempted to return to work for defendant-employer. N.C. Gen. Stat. §§ 97-29; -30. However, there is insufficient evidence of record from which the Commission can determine any specific dates for the periods of work and inability to work.
8. Plaintiff is entitled to have defendants pay for all medical treatment and expenses incurred or to be incurred as a result of the compensable occupational disease as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-25, -59.
9. The defense of this claim was based upon reasonable grounds and not stubborn, unfounded litigiousness. Therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1; Sparks v.Mountain Breeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff permanent and total disability compensation at the rate of $389.31 per week beginning with plaintiff's last day worked in June of 2000 and continuing for the remainder of plaintiff's life or until defendants obtain permission from the Commission to cease payment of compensation. Any compensation which has accrued to date shall be paid in a lump sum, subject to attorney's fees as specified below.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of the compensable occupational disease as may be required to provide relief, effect a cure or lessen plaintiff's period of disability.
3. The parties shall consult defendant-employer's payroll records to determine the specific dates of plaintiff's unsuccessful attempts to return to work in 1999. Defendants shall pay plaintiff temporary total compensation at the rate of $389.31 per week and temporary partial disability compensation at the rate of two-thirds of the difference between his average weekly wage of $583.94 and the wages he was able to earn during his unsuccessful attempts to return to work for the applicable periods in 1999. In the event that the parties are unable to reach agreement on the compensable periods, the parties may make a motion to the Commission for resolution of any disputed amounts or periods. The Full Commission retains jurisdiction over this issue.
4. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraphs 1 and 3 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of the lump sum due plaintiff under Paragraphs 1 and 3 of this AWARD shall be paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth check.
5. Defendants shall pay the costs.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN